and we'll take up Amaral v. Ryan Mr. Phelan, do you wish to proceed? Yes, Presiding Judge Wardlaw and may it please the court, Thomas Phelan for Travis Amaral. The question before the court in the COA is whether Amaral's sentence constituted cruel and unusual punishment. The question before the court is not whether the sentence violates in some ill-defined way Miller v. Alabama. The clearly established law that governs this case is that children are categorically excluded from sentences of death in prison in all cases for all crimes, including murder. It must be given some meaningful opportunity to obtain release on demonstrated maturity and rehabilitation unless, in the case of murder only, the state sustains its burden to establish that the crime was not the result of unfortunate transient immaturity that was caused by irreparable corruption. And the state has the burden, quite clearly, from Graham 506 at 75 where the court said, It is for the state, in the first instance, to explore the means and mechanisms for complying with the rule, which is one may not sentence children to life in prison, absent of showing, of irreparable corruption. And the rule applies to all cases, including murder, because the categorical exclusion rule is child-centered, not crime-specific. As Miller said, none of what Graham said about children, about their distinctive and transitory mental traits and environmental vulnerabilities, is crime-specific. So, the court goes on, Graham's reasoning implicates any life-without-parole sentence imposed on a juvenile. The respondents' preoccupation with Miller is for purposes of trying to ensnare Grahamerall into not having a mandatory life-without-parole sentence. That's irrelevant to the question. The discussion in Miller with respect to the bar on mandatory LWOP sentences, life-without-parole, was for purposes of giving effect to the rule crafted in capital cases that sentencing must be individualized to the circumstances of the defendant and the circumstances of the crime. And it was merely imported, that individualized consideration rule, was merely imported into the categorical exclusion cases with respect to children. It's neither talismanic, nor is it required. The constitutional harm that the categorical exclusion cases, including Miller, seeks to ameliorate is the prospect of a child spending the rest of his life in prison with no prospect for meaningful, no meaningful prospect for release. Therefore, labeling a sentence either as mandatory, de facto mandatory, the sum of multiple sentences for multiple crimes, is wholly irrelevant to adherence to the constitutional rule, which is that children are categorically excluded from life in prison without a meaningful opportunity for a release. Counsel, what case establishes that as clearly established law? Graham and Miller and Montgomery. Well, Miller didn't involve a mandatory sentence, life sentence. It did. It did. And as I said, Your Honor, the only reason that it takes center stage in many of respondents' briefings is because it's a way for cases like Amaral's not to be adjudicated. But the truth is, Arizona doesn't have a mandatory J.L. Watt statute. The only reason that Arizona defendants are able to avail themselves of Miller relief is by operation of an Arizona statute, which abolished parole in 1994. So it's an idiosyncratic back-ending of life sentences in Arizona, which makes them, for all practical purposes, mandatory life because you can't get parole. But that's not relevant, in my view, to the clearly established federal law. The clearly established federal law, as articulated in Graham and as extended to murder cases in Miller, is simply children can't be sentenced to life without parole without a reasonable opportunity for release. But, Counselor, you can see that there's no Supreme Court case that has all the facts that are in this case, which is a murder, a homicide without a mandatory life sentence, right? There's nothing that puts them all together like this case does. That may be true, but this is an on-all-fours Graham case. Well, Graham involved a non-homicide. I appreciate that, but Graham – or, I mean, Miller explicitly said that Graham's reasoning implicates any life without parole sentence imposed on a juvenile. Right, but that had mandatory, so nothing puts it all together. Well, I disagree respectfully, Your Honor. Your Honor, this is the insidiousness of this label mandatory because it diverts sometimes attention to what's at stake here. It's not about whether the sentence was mandatory or not. It's about ameliorating the harm that Graham, Roper, Miller, and Montgomery all acknowledge is the clearly established rule. And the reason is obvious. Children are more able to change. The severity of the punishment for a 16-year-old doing life could be 70 years versus a 46-year-old doing life, which could be 30 years. So the gravity of the punishment is enormously greater, and there's a fundamental difference between the sentenced individual. So all Miller did was give effect to the rule established in Roper and Graham in a particular context, and somehow the context seems to drive thinking about these cases. I would appreciate it, Presiding Judge Wardlaw, if I could reserve a minute. I'm sorry I didn't say that at the beginning. You may, but as I understand Miller, Miller said that you have to have a discretionary sentencing scheme so that the fact that the defendant's youth could be considered. Maybe Arizona's sentencing scheme is unique in this mandatory consecutive sentences, but it did seem as though the trial court judge thought he could deviate from that. In particular, he mentioned that Amaral's age was a mitigating factor, so it seems like he in fact considered the age and then went on and did the mandatory consecutive sentences anyway. Yes. Well, his consideration of age was certainly not what was envisioned in Roper, Graham, and Miller. The consideration of age requires the balancing between the two questions, whether the crime is the result of unfortunate but transient immaturity or the result of irreparable corruption. And if one looks at the sentencing proceeding, if anything, Mr. Amaral was more immature than his chronological age. That was all over the record. Counsel, if I could make the rule, I would definitely make your rule. I think you're correct. I appreciate that, Judge. But I just don't see that that rule is clearly, I'm just having trouble seeing how it's clearly established. And I'm sorry I took up your time, so I'll give you a minute. Thank you. And Mr. Riley, we'll hear from you. Thank you, Your Honor. May it please the Court, Andrew Riley. I'm Assistant Attorney General for the state of Arizona, and I'm appearing on behalf of respondents in this matter. To begin, I would just like to note, as I would if we were appearing in person, that members of the victim's families are with us. They're presently watching via live stream, and so I just wanted to point that out to the Court. Working backwards to Your Honor's question or to Your Honor's comment about the consecutive nature of Arizona's scheme, it wasn't – it's not mandatory. The sentences were not mandatory. Would you explain to me what the trial court meant when he said it should be noted consecutive sentences have been imposed, not only because the statute in Arizona mandated consecutive sentences unless there are reasons for imposing concurrent, but because I could find no reasons in mitigation apart from your age. So what was he saying? That it's not mandatory, but you have to affirmatively find reasons for deviating? That the statute – well, the statute is a presumption statute that if there's – if the judge is silent, you can certainly just impose a sentence, and if the judge is silent on various sentences, the appellate courts are going to presume that it's consecutive because you haven't explained why there's a good reason for it to be concurrent. So it was – it was discretionary. You just have to give a reason why it was discretionary, and he says I can find no reason why it's discretionary, even though your age, but the particular deliberate acts that you did, the lying in wait, the executing the two victims, waiting 30 seconds before you execute the second. He doesn't say that, but just – it's in summary that I consider I've got to give a reason why I can do concurrent. I don't find there's a reason why to do concurrent, and so that's how – I mean, that's how I read it. There certainly was nothing consecutive or requirement under Arizona law at the time. Counsel, is there a particular statute that governs whether or not a sentence is concurrent or consecutive? It was not. What law was this – the sentencing judge referring to then? He was referring to – sorry, one second. He was referring to 13708, which just – which says that – sorry, I'm just getting the right language. Take your time. The sentence or sentences imposed – like I said, it was just a presumption statute, and there was case law on it, but it was just – it's really just a presumption on how we're going to interpret sentences when they're absent, express language on whether they were to run consecutive or concurrent. It's just that the court shall set forth on the record reasons for its sentence if it were to consider concurrent or if it were to order concurrent sentences. That's what he – that was just the statute that I think he was referring to, and I don't – whether it's a clumsy reference or a misspeak, he certainly wasn't bound. I mean, there was nothing in the law – there was no statute that said that things must be consecutive or anything along those lines. There was a discretion to do so. And that was ultimately the – you know, that was ultimately the question here at the sentencing hearing. And as another note, there was no backdooring here as far as the, you know, fixing of the parole. The sentences – the offenses were committed in 1991 when parole was an option. Parole has always been an option for Mr. Amaral because the 94 Amendment doesn't affect him because it was after his crime. So that's always been the case. But while I'm still – it seems as though Amaral is raising more sort of a – or more of a Montgomery claim about a permanent incorrigibility finding or things of that sort. Jones has made clear that that's not the case. And the reason the state is focused on the Miller claim because that's been the claim all along. That was the claim in state court. That's the claim in district court. And Miller, simply by its express language, applies only to juvenile offenders who receive mandatory life without parole sentences. And that didn't happen here. And the reasoning behind that is because life without parole is akin to death penalty when it's given to a juvenile. So you just need – so before that sentence can be imposed, an individualized sentencing hearing must occur where the offender's age and characteristics are considered. And if that's done, then Miller is satisfied. Graham is a categorical ban, and Miller simply is not because Graham, as Graham itself says, homicide is categorically different than other crimes. And just as a final note, I'd point to this court's decision in Demersian that dealt with essentially the same sentence, two consecutive 25-to-life sentences, and holding that it simply can't be said that it's unreasonable to think that Miller only applies to life without parole sentences. And that's what the Arizona Court of Appeals held here. And it's simply not contrary to or an unreasonable application of clearly established federal law because we don't have a Supreme Court holding to the contrary. And I can certainly answer any other questions that your Honors may have. If not, the respondents just submit on our briefs and ask that you affirm the district court's ruling denying habeas relief in this matter. Thank you very much, Your Honors. Thank you, Counsel. Mr. Phelan? Mr. Phelan, I think you're muted. I was. Pardon me. Okay, thank you. The discussion just highlights the insidiousness of this mandatory trap. If the harm to be ameliorated is that children cannot be sentenced to death in prison, then one could simply dodge Miller in any number of ways and allow children to be sentenced to death in prison. And they won't find relief because it's not a mandatory sentence. That's not what it's about. It's about effectuating the wisdom of Roper and Graham, adopted by Miller, that children in all cases, in all cases except for the very rare ones whose crimes were motivated by irreparable corruption, must have a meaningful opportunity for release. The parole that your friend across the aisle was referring to is the parole that Amaral will be eligible for at age 74? Yeah, well, now that's 79, Your Honor, because by next March he will be serving his 30th year on his first 25 to life. So there's no doubt that he's going to die in prison, because the parole board has refused consistently for the last four parole hearings to grant parole because they focus exclusively on the nature of the crime. Parole boards aren't required because the cases don't talk to them to apply the Miller standard, which is a consideration of youth and its transient youthfulness versus permanent corruption. And so they don't. So I can tell you that Mr. Amaral now, if he's granted parole in March, will be 79 and a half when his first parole eligibility or meaningful opportunity for release will come around.  All right. Thank you, counsel. Thank you. Amaral versus Ryan will be submitted.
judges: WARDLAW, BRESS, BUMATAY